UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

Nº 05 Civ. 7057 (RJS)

———————————

DOMINGO ESPIRITU,

Petitioner,

VERSUS

MS. HAPONIK, SUPERINTENDENT, GREEN HAVEN CORRECTIONAL FACILITY,

Respondent.

———————————

MEMORANDUM & ORDER
ADOPTING REPORT AND RECOMMENDATION
January 19, 2011

———————————

RICHARD J. SULLIVAN, District Judge:

Domingo Espiritu ("Petitioner") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") challenging his conviction in New York State Supreme Court, New York County, for murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree, and two counts of assault in the second degree. Specifically, Petitioner asserts that: (1) the trial court violated his due process rights by refusing to suppress evidence of an unduly suggestive lineup; (2) the trial court violated his right to present a defense by improperly precluding testimony from a police detective that two witnesses had failed to identify Petitioner in a lineup; and (3) he was denied effective assistance of counsel because his trial attorney failed to object to the trial court's allegedly improper

jury instructions and the jury's allegedly inconsistent verdicts.

Before the Court are the Report and Recommendation (the "Report") of the Honorable Michael H. Dolinger, Magistrate Judge, recommending that the Petition be denied, and Petitioner's Objections to the Report. For the following reasons, the Court adopts the Report in its entirety and denies the Petition.

I. BACKGROUND

A. Facts

On a hot August day in 1989, police officers ejected Petitioner from a public swimming pool in upper Manhattan after he swam in a closed area and refused to comply

with orders from lifeguards that he get out.[1] (Tr. at 275, 277-296, 463-476.) Following an altercation with a lifeguard while he was being escorted out of the pool area, Petitioner turned around and told the lifeguard that he would be back. (*Id.* at 297-298, 300, 472, 477, 682.) Later that day, Petitioner returned with a firearm and opened fire in the crowded pool area, killing a thirteen-year-old girl and wounding three others. (*Id.* at 120-25, 134-48, 226-27, 302-13, 365-70, 650-56, 864-73, 975-76.) He escaped through a hole in the fence and fled the scene. (*Id.* at 112, 170, 200-01, 216-18, 226-28.)

Later that evening, the police received an anonymous phone call informing them that Petitioner was the shooter and that he was preparing to flee to the Dominican Republic. (Supp. H'rg at 5-6, 18.) The police located a photograph of Petitioner, created a photo array, and showed it to one of the police officers who witnessed the shooting. (*Id.* at 7-8.) After the officer identified Petitioner in the photo array, the police went to the address provided by the anonymous tipster; however, Petitioner was not at home and could not be located. (*Id.* at 9, Tr. at 955-960.) Later, the police showed the photo array to seven other witnesses, six of whom identified Petitioner as the shooter. (Supp. H'rg at 31, 40, 42-43, 46, 48, 50.)

Petitioner was indicted on February 9, 1990, and charged with two counts of second degree murder, first-degree assault, two counts of second-degree assault, and criminal possession of a weapon. (Ex. A.)

On September 6, 1998, more than nine years after the shooting, Petitioner was extradited to New York from the Dominican Republic. (Tr. at 1078-80.) On September 29, 1998, the police arranged a lineup, composed of Petitioner and five men from the Ward's Island homeless shelter who roughly matched Petitioner's age, height, weight, and complexion. (Supp. H'rg at 60-62, 72; Tr. at 1102, 1105.) Detective Pisano, who organized the lineup, went to Ward's Island and personally chose the individuals after he had a chance to see Petitioner. (Supp. H'rg at 70, 101.) At the time of the lineup, Petitioner was approximately thirty-two years old, 5'5" to 5'6" tall, and weighed 140 pounds. (*Id.* at 95-96.) Petitioner chose to sit in position two. (*Id.* at 69-70.) Before conducting the lineup, the police asked the other individuals participating in the lineup for their age and approximate height and weight. (*Id.* at 100.) The police wrote down the following information: the individual in position one was thirty-seven years old, 6' tall, and weighed 215 pounds; the individual in position three was thirty-eight years old, 5'9" tall, and weighed 150 pounds; the individual in position four was forty-two years old, 5'9" tall, and weighed 147 pounds; the individual in position five was thirty-four years old, 5'8" tall, and weighed 180 pounds; and the individual in position six was forty years old, 5'8" tall, and weighed 190 pounds. (*Id.* at 96-99.) During the lineup, all of the participants were seated, and each held a placard with a number on it, identifying his position and slightly obscuring his midsection. (*Id.* at 77.)

---

[1] The facts are drawn from the testimony received at trial ("Tr.") and the suppression hearing ("Supp. H'rg."), and exhibits attached to Respondent's answer ("Ex."). In reviewing the Petition, the Court must view any disputed facts in the light most favorable to the prosecution and draw all inferences in its favor. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court has also considered Respondent's Opposition to the Petition ("Resp't Opp'n"), Petitioner's July 7, 2009 Motion Pleading Special Matters ("Pet'r Mot. Pleading Special Matters"), Respondent's Opposition to the July 7, 2009 Motion ("Resp't Mot. Opp'n"), and Petitioner's Objections ("Pet'r Obj.").

Although defense counsel objected to the composition of the lineup on the grounds that the other individuals appeared older and heavier than Petitioner, the police did not alter it. (Supp. H'rg at 104.) Thereafter, nineteen eyewitnesses from the pool shooting were asked to make identifications based on the lineup. (*Id.* at 60-62; Tr. at 1100-01, 1107-09.) As part of that process, each viewed the lineup individually and was then escorted out of the building to prevent discussions with the other witnesses. (Supp. Hr'g at 75-92; Tr. 1108-12.) In all, nine witnesses identified Petitioner as the shooter; one could not make a definitive identification, but stated that the shooter was either Petitioner or one of the fillers; four could not identify anyone; and five witnesses misidentified fillers as the shooter. (Supp. Hr'g at 78, 81-91.) Among those witnesses who identified Petitioner as the shooter was an individual who worked for one of Petitioner's brothers and saw him frequently in the neighborhood. (Tr. at 754-67, 776-79, 783-91, 818-19.)

Before trial, defense counsel moved to suppress the identifications on the ground that the lineup was unconstitutionally suggestive. (*Id.* at 114-15.) After a hearing, the trial court denied the motion and held that the identifications would be allowed into evidence, finding that the Petitioner and the fillers appeared sufficiently similar in age, weight, height, and complexion such that the lineup was a fair test of the witness's ability to make an identification and met the requirements of due process. (*Id.* at 123-25.) The trial court also noted that the Petitioner's age, weight, height and complexion were not significant parts of the descriptions given by the witnesses who viewed the lineup. (*Id.* at 124.)

Trial commenced on September 18, 2000. The prosecution called numerous witnesses, including twenty-two individuals who either saw the shooting or were victims in the shooting. Of these, nine had identified Petitioner in the lineup and also made in-court identifications of Petitioner as the shooter.[2] (Tr. at 596, 740, 903-04, 926-927.) During the cross examination of Detective Pisano, Petitioner sought to introduce testimony concerning misidentifications made by two individuals who were unavailable to testify. (*Id.* at 1059-60.) The trial court, however, excluded this testimony on hearsay grounds. (*Id.*)

On October 3, 2000, the jury returned a verdict of guilty on the counts of (1) second degree murder based on depraved indifference, (2) intentional first-degree assault, (3) two counts of second-degree assault, and (4) criminal possession of a weapon. The jury acquitted Petitioner on the intentional murder count. Petitioner was sentenced on October 23, 2000 to concurrent terms of twenty-five years to life on the murder conviction, seven-and-one-half to fifteen years for the first degree assault and criminal possession convictions, and three-and-one-half to seven years for the second degree assault convictions.

In February 2003, Petitioner appealed his convictions to the Appellate Division, First Department. (Ex. E.) He argued, *inter alia*, that the lineup was unduly suggestive and that the trial court erred by excluding testimony about the misidentifications made by the two unavailable witnesses. (*Id.*) The Appellate Division rejected Petitioner's arguments and affirmed his conviction. *See People v. Espiritu*, 767 N.Y.S.2d 218, 219

---

[2] Additionally, four witnesses who viewed the lineup testified that they were unable to identify anyone, and two witnesses testified that they had misidentified the shooter at the lineup. (Tr. at 236, 258-59, 596, 740, 903-04, 926-927.)

(N.Y. App. Div. 2003).   The court found that, based on the photograph of the lineup, the participants were sufficiently similar to Petitioner such that the lineup was not unduly suggestive.  *Id.* at 218.  It also found that, even if the trial court had erred by excluding evidence of misidentifications, any error was harmless.  *Id.* at 219.  The Court of Appeals denied leave to appeal.  *See* 1 N.Y.3d 597 (2004).  Thereafter, on December 21, 2004, petitioner filed a motion to vacate his conviction with the trial court, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, on the ground of ineffective assistance of counsel.  (Ex. O.)  He argued that trial counsel was ineffective because he failed to object to a portion of the jury charge and he failed to object to the allegedly inconsistent verdicts.  (*Id.*)  The trial court denied the motion on both procedural grounds and on the merits.  *See People v. Espiritu*, 803 N.Y.S.2d 20 (N.Y. Sup. Ct. 2005) (table).  The Appellate Division denied leave to appeal.  (Ex. T.)  Petitioner is currently incarcerated in Auburn Correctional Facility in Attica, New York.

### B. Procedural History

Petitioner filed his initial petition for a writ of habeas corpus on or about August 9, 2005, and it was assigned to the Honorable Kenneth M. Karas, District Judge.  However, Petitioner erroneously stated on the Petition that he had not appealed his post-conviction petition to the highest state court having jurisdiction over the matter, prompting Judge Karas to issue two orders to show cause as to why the petition should not be dismissed for failure to exhaust remedies in state court.   Thereafter, Petitioner submitted a letter explaining that he had in fact appealed his post-conviction petition to the New York Court of Appeals, and moved to amend the petition to correct

this error and to include (1) the grounds that he raised on his direct appeal and (2) the ineffective assistance of counsel claim that he raised in state collateral proceedings pursuant to CPL § 440.10.  The Petition was reassigned to my docket on September 4, 2007.

On March 13, 2009, Petitioner filed an Amended Petition, which challenges his conviction on three grounds.    First, Petitioner asserts that the trial court violated his due process rights by refusing to suppress evidence of an unduly suggestive lineup.    Second, Petitioner argues that the trial court violated his right to present a defense by improperly precluding testimony from Detective Pisano concerning the two witnesses who had failed to identify Petitioner in the lineup.   Finally, Petitioner claims that he was denied effective assistance of counsel because his trial attorney failed to object to the trial court's allegedly improper jury instructions and the jury's allegedly inconsistent verdicts.[3]  Respondent filed her answer on June 5, 2009.    Thereafter, on June 9, 2009 the Petition was referred to Judge Dolinger for a Report and Recommendation.

On July 7, 2009, Petitioner submitted a motion requesting that the Court hold his petition in abeyance pending the exhaustion of additional claims that he intended to add to his Petition based on ineffective

---

[3] Page 3A of the amended petition references the claims that Petitioner raised on his direct appeal, but does not specifically raise the ineffective assistance of counsel claims that he presented in state collateral proceedings pursuant to CPL § 440.10.  Nonetheless, because of Petitioner's *pro se* status, his clear intent to raise those claims as expressed in his motion to amend, and Respondent's failure to object, the Court construes the amended petition as though it also sets forth the ineffective assistance of counsel claim that Petitioner raised in his motion pursuant to CPL § 440.10.

assistance of trial and appellate counsel.[4] (*See* Pet'r's Mot. Pleading Special Matters.) Respondent opposed the motion. Before Judge Dolinger could rule on the motion, however, the Appellate Division denied Petitioner's motion without opinion. *See People v. Espiritu*, 2009 N.Y. Slip Op 87158(U) (1st Dep't Oct. 29, 2009). On January 25, 2010, the Court of Appeals denied leave to appeal the decision. *See People v. Espiritu*, 13 N.Y.3d 938 (2010) (table).

Judge Dolinger filed his Report on August 3, 2010, recommending the Petition be denied. Judge Dolinger did not expressly rule on Petitioner's Motion Pleading Special Matters. Petitioner timely submitted his objections.[5]

## II. DISCUSSION

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief only if a claim that was adjudicated on the merits in state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. Fed. R. Civ. P. 72(b); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b) and *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). To the extent that a party makes specific objections to a magistrate judge's findings, the court must undertake a de novo review of the petitioner's objections. *See* 28 U.S.C. § 636(b)(1); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). However, where the objections are "conclusory or general," or where the petitioner "simply reiterates his original arguments," the report should be reviewed only for clear error. *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (citation and internal quotation marks omitted); *accord Cartagena v. Connelly*, No. 06 Civ. 2047 (LTS) (GWG), 2008 WL 2169659, at *1 (S.D.N.Y. May 23, 2008). Objections of parties appearing *pro se* are "generally accorded leniency" and construed "to raise the strongest arguments that they suggest." *Milano v. Astrue*, 05 Civ. 6527 (KMW), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008) (internal quotation marks omitted). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a 'second bite at the apple' by simply relitigating a prior argument." *Pinkney v. Progressive Home Health Servs.*,

---

[4] For unknown reasons, the motion was never docketed. However, Judge Dolinger's order setting a deadline for Respondent to respond to the motion, and Respondent's opposition to the motion were docketed. (Docs. 18, 19.)

[5] There appears to be no question that Petitioner originally mailed his objections to Judge Dolinger's Report on October 15, 2010. For reasons unknown, Petitioner's objections were not initially docketed. After discovering this problem, Petitioner mailed another copy to the Court on October 3, 2011, which was received and docketed on October 5, 2011. (Doc. 25.)

No. 06 Civ. 5023 (LTS), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008).

As set forth in the fifty-six page Report, Judge Dolinger found all of Petitioner's claims to be meritless. (Report at 3.) First, he found that the lineup was not unduly suggestive, and thus, the Appellate Division reasonably applied Supreme Court precedent. (*Id.* at 24.) Relying on a photograph of the lineup and physical descriptions of Petitioner and other individuals in the lineup, Judge Dolinger found that "petitioner was sufficiently similar in appearance to the other men in the lineup." (*Id.* at 26.) Second, Judge Dolinger found that Petitioner was not denied his right to present a defense when the trial court prevented him from eliciting testimony from the detective who conducted the lineup regarding misidentifications made by two unavailable witnesses. (*Id.* at 30.) He found that the trial court properly applied state law in ruling that this evidence was inadmissible hearsay and, even if the trial court's decision was erroneous, any error was harmless. (*Id.* at 33-34.) Finally, Judge Dolinger found that Petitioner's ineffective assistance of counsel claim was procedurally barred because the state court denied the claim on an independent and adequate state ground. (*Id.* at 38.) Alternatively, he held that the claim was meritless. (*Id.* at 47.)

A. Petitioner's Objections

Petitioner raises three objections to the Report. First, he asserts that Judge Dolinger incorrectly found that the participants in the lineup were sufficiently similar to Petitioner. (Pet'r Obj. at 2.) He contends that the appearances of the participants were clearly distinct. (*Id.* at 4.) In support of his argument, Petitioner provided side-by-side photographs of himself and the other participants in the lineup. (*Id.* at 5-7.)

Second, Petitioner objects to Judge Dolinger's conclusion that the exclusion of testimony from the police officer who conducted the lineup that two unavailable witnesses to the lineup did not identify Petitioner as the shooter did not violate Petitioner's constitutional rights. Third, Petitioner argues that he received ineffective assistance of appellate counsel, but does not address Judge Dollinger's conclusion that his challenge to trial counsel's performance is procedurally barred and, alternatively, meritless. The Court addresses Petitioner's objections in turn.

1. Identification Evidence

Petitioner objects to Judge Dolinger's determination that the other participants were "sufficiently" similar in appearance such that the lineup was not unduly suggestive. He argues that the differences between him and the other participants were so great in terms of weight, height, complexion, and age that based on the shooter's description witnesses could identify only him as the perpetrator. The Court reviews Petitioner's claims de novo.

Although Petitioner points out a number of differences between himself and the other participants in the lineup, many of which are readily apparent from the photograph of the lineup, the Court holds that the Appellate Division did not err when it concluded that the lineup was not unnecessarily suggestive. Under clearly established federal law, identification evidence is admissible unless it was "unnecessarily suggestive" and created a "very substantial likelihood of irreparable misidentification." *Brisco v. Ercole*, 565 F.3d 80, 90 (2d Cir. 2009) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967) and *Simmons v. United States*, 390 U.S. 377, 384 (1968)) (internal quotation marks omitted). This standard

"hews closely to the facts of a particular case and turns on a court's judgment in evaluating those facts." *Id.* Courts applying this fact-dependent standard are "entitled to significant leeway." *Id.* (internal quotation marks omitted).

Noticeable differences between the suspect and fillers in a lineup do not automatically render a lineup unduly suggestive. Due process does not require "total uniformity of appearance" between the defendant and the other participants in the lineup. *Piper v. Portuondo*, 82 F. App'x 51, 52 (2d Cir. 2003). When the appearance of participants in a lineup is not uniform with respect to a given characteristic, the principal question in determining suggestiveness is whether "the appearance of the accused . . . so stood out from all of the others as to suggest . . . [that the accused] was more likely to be the culprit." *United States v. Wong*, 40 F.3d 1347, 1359-60 (2d Cir. 1994) (citations, internal quotation marks and alterations omitted). Generally, courts have found that a lineup is unduly suggestive "if the defendant is the only participant who meets the particular description of the perpetrator given by eyewitnesses." *E.g.*, *Frazier v. New York*, 156 F. App'x 423, 425 (2d Cir. 2005) (finding lineup impermissibly suggestive where only the defendant had dreadlocks of any significant length, and dreadlocks were the most distinctive feature in the description given by the witness who identified him).

Petitioner is correct that there are observable differences in height and weight between him and the other individuals in the lineup. However, all of the factual findings of the state court regarding the suggestiveness of the lineup must be presumed correct in the absence of clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). Here, Petitioner has not come forward with clear and convincing evidence to challenge the findings made by the Appellate Division, and has not established that it unreasonably applied federal law by concluding that the lineup was not unduly suggestive.

First, although the participants had varying complexions, all of them appear to be of Hispanic origin. The difference in complexion between Petitioner and the fillers – to the extent there is a difference – would not necessarily signal to the witness that Petitioner was the culprit. Second, while Petitioner was the shortest individual in the lineup, the differences in height were not unduly suggestive since all of the participants were seated and their actual standing height was not revealed. Third, while some of the other participants were noticeably heavier than Petitioner, the Appellate Division did not misapply clearly established federal law by concluding that these differences did not render the lineup unduly suggestive. *Cf. Jones v. Fischer*, No. 05 Civ. 7774 (WHP), 2009 WL 884814, at *5 (S.D.N.Y. March 30, 2009) (holding that the state court's determination that the lineup was not unduly suggestive was not unreasonable where the defendant was the heaviest and tallest individual in the lineup). Similarly, although the participants ranged in age from thirty-two to forty-two, with Petitioner being the youngest, nothing about the participants' age differences necessarily makes Petitioner stand out as to make the lineup unduly suggestive.

Moreover, since the witnesses were asked to make an identification nine years after the shooting, they had no way of knowing whether the shooter had gained weight or how he had aged in the interval. As a result, the differences identified by Petitioner were not suggestive since the

witnesses must have taken into account that certain characteristics of the shooter – such as weight or youthful appearance – may have changed since the time of their initial encounter in 1989.

Additionally, although the eyewitnesses initially gave similar descriptions of the shooter as a slender man of medium height, Petitioner has not identified anything in these descriptions that renders the composition of the lineup unduly suggestive. Petitioner did not, for example, adduce any facts to show that the witnesses who identified him did so on account of his height. *Cf. Howard v. Bouchard*, 405 F.3d 459, 471 (6th Cir. 2005) (remarking that a "height differential, standing alone, is usually not enough to make a lineup procedure suggestive"). In contrast, witnesses who clearly saw the shooter at the pool, including an individual who knew him from prior encounters, identified Petitioner as the shooter. Accordingly, the Court, on *de novo* review, adopts the Report and concludes that the Appellate Division did not unreasonably apply Supreme Court precedent when it upheld the trial court's decision not to suppress the lineup identifications.

2. Evidence of Misidentifications

Petitioner argues that his inability to solicit testimony from Officer Pisano regarding misidentifications made by two unavailable witnesses deprived him of a fundamentally fair trial, and objects to Judge Dolinger's conclusion to the contrary. Although Petitioner's objection amounts to little more than a "reiterat[ion] of his original arguments," *Walker*, 216 F. Supp. 2d at 292, the Court's resolution of this objection would be the same under either the de novo or clearly erroneous standard.

As noted above, when the state adjudicates a habeas petitioner's claim on the merits, review is pursuant to the standards established by AEDPA in 28 U.S.C. § 2254(d). *Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006). Here, while the Appellate Division did not directly address the trial court's evidentiary ruling, it held that even if the trial court had erred, any error was "harmless because this evidence was cumulative of similar evidence that was received at trial and the evidence of [Petitioner's] guilt was overwhelming." 767 N.Y.S.2d at 218.

To determine if the exclusion of evidence violated a criminal defendant's right to present a complete defense, the Court begins by reviewing the trial court's evidentiary ruling. *Hawkins*, 460 F.3d at 244. Petitioner does not challenge the Report's conclusion that the trial court correctly excluded this evidence pursuant to New York's evidentiary rules regarding hearsay, and Judge Dolinger's conclusion is not clearly erroneous. Thus, the exclusion of this evidence pursuant to New York's evidentiary rules violated Petitioner's constitutional rights only if New York's hearsay rule is "'arbitrary' or 'disproportionate to the purposes [it is] designed to serve'" in this situation. *Id.* at 244 (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). "A state evidentiary rule is unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Id.* (citation and internal quotation marks omitted). Petitioner bears the burden of establishing that the exclusion of this evidence violated his constitutional right to a fundamentally fair trial. *See id.* at 246. In this case, there is no basis for concluding that the exclusion of this evidence violated Petitioner's right to a fair trial.

At trial, Detective Pisano testified that a total of nineteen witnesses viewed the lineup. Nine of these witness testified that they had identified Petitioner as the shooter. Six witnesses testified that they failed to identify Petitioner in the lineup. (Tr. at 318-19, 404, 446-48, 525-57, 574, 626, 671, 698-705, 776, 1100-01.) Whether or not the jury could infer that the remaining four witnesses failed to identify or misidentified the shooter, it cannot be said that the exclusion of testimony about two of those misidentifications compromised the fundamental fairness of Petitioner's trial. In light of the fact that the jury heard testimony from four witnesses who could not make an identification during the lineup (Tr. 596, 740, 03-04, 926-27) and two who acknowledged that they had identified someone other than Petitioner during the lineup (*id.* at 236, 258-59), the testimony sought by Petitioner would have at most been cumulative and would not have offset the overwhelming evidence of Petitioner's guilt that was introduced at trial. Accordingly, the Court cannot conclude that the exclusion of testimony regarding misidentifications made by two witnesses infringed upon Petitioner's right to a fair trial.

### 3. Ineffective Assistance of Trial Counsel

In his third objection to Judge Dolinger's Report, Petitioner argues principally that appellate counsel was constitutionally ineffective. Because Petitioner raised only claims relating to ineffective assistance of trial counsel in his amended petition, these objections are not relevant and the Court reviews the Report's conclusion on this ground for clear error. After careful review of Judge Dolinger's Report, the Court finds no clear error and adopts the Report in its entirety on this claim.

* * *

With respect to those portions of the Report to which Petitioner did not object, the Court finds, after a careful review of the record, that Judge Dolinger's thoughtful and reasoned Report is not clearly erroneous, and therefore adopts it.

### B. Motion to Stay Habeas Proceeding and Amend Petition

As noted above, on July 7, 2009, Petitioner submitted a motion to stay the habeas proceedings pending a decision on his motion for a writ of error *coram nobis*, filed in state court one day prior. (*See* Pet'r Mot. Pleading Special Matters.) It appears that Petitioner was seeking to exhaust additional claims of ineffective assistance of counsel in state court so that he could then, if necessary, amend his federal habeas petition to add those claims. Specifically, Petitioner argued in his motion for a writ of error *coram nobis* that appellate counsel was ineffective for failing to argue that his rights were violated when the trial court denied his request to substitute trial counsel and that he received ineffective assistance at trial due to a variety of alleged mistakes by trial counsel. Judge Dolinger does not appear to have expressly ruled on this motion. In an abundance of caution, the Court will review the July 7, 2009 motion *de novo*.

Initially, the Court denies as moot the motion to stay the proceedings because Petitioner's motion before the Appellate Division has been denied, as has his appeal to the New York State Court of Appeals. *See People v. Espiritu*, 2009 NY Slip Op 87158(U) (1st Dep't Oct. 29, 2009); *Espiritu*, 13 N.Y.3d at 938. Thus, Petitioner has exhausted his claims.

To the extent Petitioner is seeking to amend his petition, his motion is denied. Petitioner seeks to include a claim of ineffective assistance of appellate counsel on the grounds that appellate counsel failed to raise on appeal that (1) the trial court erred when it denied Petitioner's request for substitution of counsel; and (2) Petitioner received ineffective assistance of trial counsel when trial counsel arrived at the scheduled lineup an hour late, failed to object to Petitioner being paraded around the station in front of people who would later identify him at the lineup, allowed a warrantless search of his apartment, and was generally unprepared to mount a defense. (*See* Pet'r Mot. Pleading Special Matters, Ex. C, at 11-16.)   Respondent argues that Petitioner's claims are untimely and do not relate back to the claims in the initial petition. (Resp't Mot. Opp'n at 9.)

AEDPA imposes upon a petitioner seeking federal habeas relief a one-year statute of limitations, which runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1).   A conviction in a New York State court becomes final ninety days after an order of the Court of Appeals is filed, when petitioner's time to seek Supreme Court review has expired.   *See Nieves-Andino v. Conway*, No. 08 Civ. 5887 (NRB), 2010 WL 1685970, at *6 (S.D.N.Y. Apr. 20, 2010). The statute of limitations is tolled if any state post-conviction proceedings are pending after the conviction becomes final. *See* 28 U.S.C. § 2244(d)(2). However, the filing of a federal habeas petition does not toll the statute of limitations. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

A petitioner may amend his habeas petition to include additional claims only if

those claims are timely under AEDPA or if the claims "relate back" to the original claims, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815 (2d Cir. 2000). Relation back, in the habeas context, requires that "the original and amended petitions state claims that are tied to a common core or operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). An amended habeas claim "does not relate back (and therefore escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Id.* at 650. Also, a claim does not relate back simply because it arises out of the same "trial, conviction, or sentence." *Id.* at 664.

The additional ineffective assistance of counsel claims that Petitioner seeks to add are untimely.  His conviction became final on March 30, 2005, ninety days after the Court of Appeals denied leave to appeal. Petitioner, however, had a § 440.10 motion pending at that time, thus tolling the statute of limitations.   Therefore, the statute of limitations began to run on September 16, 2005, when the Appellate Division denied leave to appeal the denial of his § 440.10 motion. Petitioner did not seek to add these claims to his habeas petition until July 7, 2009, almost four years later.

Moreover, Petitioner's new claims do not relate back to his original claims in the Amended Petition.   Petitioner's initial claims are that the trial court violated his rights by not suppressing identification evidence from an allegedly unconstitutional lineup and not allowing a police officer to testify about two eyewitnesses who failed to identify Petitioner at the lineup.   He also claims that his trial counsel was ineffective for failing to object to the jury charge and

allegedly inconsistent verdicts.   None of those claims relate to *appellate* counsel or any of the underlying conduct that Petitioner alleges appellate counsel failed to raise. Because the facts "differ in time and type from the facts underlying each of [the] original claims in the petition," relation back is not proper. *Kirk v. Burge*, 646 F. Supp. 2d 534, 551 (S.D.N.Y. 2009) (citation and internal quotation marks omitted). Accordingly, the Court denies Petitioner's request to amend the petition to add claims based on the allegedly ineffective assistance of appellate counsel.

IV. CONCLUSION

For the foregoing reasons, the Report is adopted in its entirety, Petitioner's motion to stay the proceedings and amend the Petition is DENIED, and the Petition is DENIED.  A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right.     *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).  The Clerk of the Court is respectfully directed to enter judgment in favor of Respondent and to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated:  January 19, 2012
        New York, New York

\* \* \*

Petitioner Domingo Espiritu appears *pro se*. Respondent Ms. Haponik is represented by Karen Schlossberg, Esq., Office of the District Attorney, New York County, One Hogan Place, New York, NY 10013.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/19/2012

11

Copies of this Order have been mailed to:

Domingo Espiritu
DIN: 00-A-6162
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021

Karen Schlossberg, Esq.
New York County District Attorney's Office
One Hogan Place
New York, NY 10013